IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERMAINE ROBERT BLAIR,<br><br>                    Petitioner,<br><br>vs.<br><br>RAYMOND MADDEN, Warden,<br>Centinela State Prison,[1]<br><br>                    Respondent. | No. 2:14-cv-02161-JKS<br><br>MEMORANDUM DECISION |

Jermaine Robert Blair, a state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254.  Blair is in the custody of the California Department of Corrections and Rehabilitation and incarcerated at California State Prison, Centinela.  Respondent has answered, and Blair replied.

## I.  BACKGROUND/PRIOR PROCEEDINGS

On May 26, 2006, Blair was charged in a 23-count amended, consolidated information, including 15 counts of armed bank robbery, 1 count of attempted murder, 1 count of first-degree burglary, 3 counts of assault with a firearm, and 3 counts of unlawful driving of a stolen vehicle. The charges arose in connection with five different bank robberies that occurred during a four-week period in 2003 and one bank robbery that occurred in 2001.  The information further alleged that Blair had previously served three prior prison terms for grand theft, burglary, auto theft, and receiving stolen property.

---

[1]        Raymond Madden, Warden, Centinela State Prison, is substituted for Warren L. Montgomery, Warden, Calipatria State Prison.  FED. R. CIV. P. 25(c).

On July 18, 2007, Blair proceeded to a jury trial. At trial, evidence was presented regarding DNA evidence collected and tested from a red "Tarheels" cap, a black "Raley's" cap, a brown glove, and a motorcycle helmet, which were found in getaway cars used in the bank robberies and were consistent in appearance with eyewitness accounts and surveillance videos of items worn by the bank robber. It was determined that Blair's DNA was present on both caps and the glove. With respect to the motorcycle helmet, two samples were taken: one from the forehead padding and the other from the face mask. Blair was eliminated as a contributor from the sample taken from the forehead area of the mask. The DNA taken from the face mask revealed a mixture from at least two individuals. At trial, the prosecution's DNA expert concluded that he "[could not] eliminate [Blair] as being a possible contributor" to the sample taken from the helmet's face mask. However, the expert also concluded that it was not possible to definitively conclude that Blair's DNA was present on the sample collected from the helmet's face mask. Instead, the expert gave probabilities of randomly selecting from the population a person who matched the face mask DNA sample at the same alleles[2] at which Blair's DNA

---

[2]     An allele is "any alternative form of a gene that can occupy a particular chromosomal locus. In humans and other diploid organisms there are two alleles, one on each chromosome of a homologous pair." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 48 (27th ed. 1988). The Ninth Circuit has explained:

> Forensic DNA tests compare allele combinations at loci where the alleles tend to be highly variable across individuals and ethnic groups. If there is no match between the alleles from the evidence DNA and the potential suspect's DNA, the suspect is generally ruled out as the source of the evidence, unless the failure is attributable to inadequate test conditions or contaminated samples. If there is a match, analysts use the frequency of the alleles' appearance in the relevant population to calculate the probability that another person could have the same pattern of allele pairs.

United States v. Chischilly, 30 F.3d 1144, 1152 n.7 (9th Cir. 1994), overruled on other grounds by United States v. Preston, 751 F.3d 1008 (9th Cir. 2014).

matched the sample.  In his summation, defense counsel used this testimony to argue that one of many people could have contributed to the DNA sample from the helmet's face mask.

At the conclusion of trial, the jury found Blair guilty of counts 1, 2, 3, 6 through 13, and 15 through 23, and found their respective allegations to be true.  The jury found him not guilty of counts 4 and 14.  The jury was unable to reach a verdict on count 5 and declared a mistrial on that count.  Blair waived a bench trial on the prior conviction allegations and admitted them. The trial court subsequently sentenced him to a total imprisonment term of 87 years with 1,619 days credit for time served.

Through counsel, Blair appealed his conviction, raising the sole issue that the court erred in denying as untimely his peremptory challenge to the trial judge.  On September 12, 2008, the California Court of Appeal issued an unpublished, reasoned opinion unanimously affirming Blair's judgment.  *People v. Blair*, No. C056244, at *3 (Cal. Ct. App. Sept. 12, 2008).  The appellate court concluded that Blair's claim was not cognizable on direct appeal because he was not entitled to any appellate review beyond which he had already received when he unsuccessfully sought a writ of mandate immediately following the trial court's ruling.  *Id.*  Blair petitioned for review in the California Supreme Court, which was summarily denied on December 17, 2008.

Blair then filed a *pro se* petition for a writ of habeas corpus in the Superior Court.  In that petition, Blair alleged that trial and appellate counsel were ineffective for a variety of reasons, his rights to due process and a fair trial were violated in numerous ways, and the trial judge exceeded his jurisdiction by questioning him at trial.  The petition was denied both on procedural grounds and on the merits in an unpublished decision issued on March 11, 2010.

3

While his state habeas petition was pending, Blair filed a *pro se* federal habeas petition in the Eastern District of California dated July 9, 2009, *Blair v. Small*, Case No. 2:09-cv-01875.  In that petition, he alleged that: 1) he was denied his right to due process due to the trial court's denial of his preemptory challenge; 2) trial counsel was ineffective for failing to file a motion to suppress, failing to obtain DNA testing data, and failing to seek a bifurcated trial; and 3) the trial judge exceeded his jurisdiction by improperly inserting himself in the trial.  A magistrate judge issued a report recommending that the petition be dismissed because claim 1 did not present a federal claim and claims 2 and 3 were unexhausted.  The Court, through a judge different than the undersigned judge, adopted the magistrate judge's findings and recommendations in full and dismissed Blair's petition.

In 2013, the crime lab which tested the DNA in Blair's trial issued a revised report on all DNA tests in Blair's case, as an apparent revision in the crime lab's protocol.  The report does not indicate that the samples were re-tested.  The report revised the analysis and conclusion only with respect to the face mask sample of the motorcycle helmet.  The revision stated: "DNA recovered from a swab of the lower inside, front, surface of the helmet consists of a mixture of DNA assumed to be from three contributors.  Based on the statistical results obtained, no inclusions can be made."

Thereafter, Blair filed another *pro se* habeas petition in the Superior Court, claiming that the revised report constituted newly discovered DNA evidence that undermined his conviction.  The Superior Court denied the petition in a reasoned, unpublished opinion issued on August 9, 2013.  Blair then raised that claim in a *pro se* habeas petition in the Court of Appeal, which was

denied without comment on November 21, 2013.  Blair additionally raised the claim in the

Supreme Court, which was likewise summarily denied on September 10, 2014.

Blair filed the instant *pro se* Petition for a Writ of Habeas Corpus to this Court on

September 14, 2014.  In this Petition, Blair argued that newly-discovered DNA evidence

undermined his conviction and also raised the claims he had earlier raised in his initial federal

habeas petition.  Docket No. 1.  Respondent moved to dismiss the earlier-brought claims as

untimely, Docket No. 14, which the Court, through a previously assigned judge, granted, Docket

No. 27.  The remaining claim is now before the undersigned judge for adjudication.  The record

does not reflect that Blair has obtained authorization from the Ninth Circuit to file the instant

Petition in District Court.

## II. GROUNDS/CLAIMS

In the sole claim remaining in his *pro se* Petition before this Court, Blair challenges his

conviction based on the revised DNA report, which he contends constitutes newly-discovered

evidence that undermines his conviction.

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C.

§ 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding,"

§ 2254(d)(2).  A state-court decision is contrary to federal law if the state court applies a rule that

contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that

are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona*, 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). Under the AEDPA, the state court's

6

findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

Blair challenges his conviction on the basis of a revised DNA report which modified conclusions based on a change in crime lab protocols.  According to Blair, "DNA evidence produced by the Sacramento County District Attorney's crime lab was used against me by the DA in my case.  That same crime lab recently issued a revised report in my case that changes the DNA evidence against me.  These changes are significant to the outcome of my case."

As an initial matter, the Court must consider whether the Petition is successive and therefore must be dismissed under AEDPA.  Before a habeas petitioner may file a second or successive petition in a district court, he must apply to the appropriate court of appeals for an order authorizing the district court to consider the application.  *Burton v. Stewart*, 549 U.S. 147, 152-53 (2007) (citing 28 U.S.C. § 2244(b)(3)(A)).  This provision "creates a 'gatekeeping' mechanism for the consideration of second or successive applications in district court."  *Felker v. Turpin*, 518 U.S. 651, 657 (1996); *see also Reyes v. Vaughn*, 276 F. Supp. 2d 1027, 1028-30 (C.D. Cal. 2003) (discussing applicable procedures in Ninth Circuit).  A district court lacks jurisdiction to consider the merits of a second or successive habeas petition in the absence of proper authorization from a court of appeals.  *Cooper v. Calderon*, 274 F.3d 1270, 1274 (9th Cir. 2001) (per curiam) (citing *United States v. Allen*, 157 F.3d 661, 664 (9th Cir. 1998)), *cert. denied*, 538 U.S. 984 (2003).  Courts have recognized that AEDPA generally prohibits successive petitions:

AEDPA greatly restricts the power of federal courts to award relief to state prisoners who file second or successive habeas corpus applications. If the prisoner asserts a claim that he has already presented in a previous federal habeas petition, the claim must be dismissed in all cases. And if the prisoner asserts a claim that was not presented in a previous petition, the claim must be dismissed unless it falls within one of two narrow exceptions. One of these exceptions is for claims predicated on newly discovered facts that call into question the accuracy of a guilty verdict. The other is for certain claims relying on new rules of constitutional law.

*Tyler v. Cain*, 533 U.S. 656, 661 (2001) (citations omitted); *see also Pizzuto v. Blades*, 673 F.3d 1003, 1007-08 (9th Cir. 2012).

In this case, Blair brought three claims in his earlier habeas petition, two of which were dismissed without prejudice as unexhausted and another was dismissed with prejudice as uncognizable on federal habeas review. *See Blair v. Small*, No. 09-cv-1875, 2010 WL 582063, at *3 (E.D. Cal. Feb. 12, 2010), *findings and recommendations adopted in full*, Docket Nos. 26, 27 (Case No. 09-cv-1875). It does not appear that he appealed that decision to the Ninth Circuit Court of Appeals.

In the instant Petition, Blair attempted to re-raise the three claims from his earlier petition and also bring the new claim relating to the revised DNA report. A court must dismiss any claim which was presented in a prior habeas petition, 28 U.S.C. § 2244(b)(1), but, as previously discussed, this Court already dismissed those claims on timeliness grounds. All that remains is the new claim. However, leave of the Court of Appeals is still required to maintain a successive petition where the claims rests on new law, new evidence, or the petitioner's actual innocence. 28 U.S.C. § 2244(b)(3). The Ninth Circuit has rejected the argument that even a colorable claim of actual innocence is not subject to the requirements of 28 U.S.C. § 2244. *See Gage v. Chappell*, 793 F.3d 1159, 1168-69 (9th Cir. 2015) (petitioner could not "take advantage of" the actual innocence "gateway" of *Schlup v. Delo*, 513 U.S. 298 (1995), to bypass limitations on

8

successive petitions set forth in 28 U.S.C. 2244 (b)(2)(B), which requires a "higher level of [actual innocence] proof" than *Schlup*).  Merely asserting one's innocence does not avoid the successive petition bar.

Blair is required to raise his grounds for making a second or successive petition before the Ninth Circuit, in a motion for leave to file a second or successive petition.  "Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application."  28 U.S.C. § 2244(b)(3)(A).  Until Blair obtains leave from the Ninth Circuit Court of Appeals to file a successive habeas petition, the Court is without jurisdiction to hear his claim. *Burton*, 549 U.S. at 149.

Moreover, Blair's "new evidence" fails to persuasively demonstrate actual innocence or to satisfy the 28 U.S.C. § 2244(b)(2)(B) standard.  Here, it appears that the former DNA report found a mixture of at least two contributors in the sample taken from the face mask and expressly included Blair as a possible contributor to that sample.  The revised report found a mixture of at least three contributors and expressly stated that no inclusions could be made as to possible contributors to that sample.  Contrary to Blair's contentions, the revised report does not conclusively exonerate him or preclude any possibility of his guilt.  As the superior court explained in rejecting this claim in Blair's state habeas petition:

> Petitioner mischaracterizes the DNA evidence presented at trial as "positively" linking him to the crime and the new DNA evidence as stating that he is excluded as a contributor.  First, the original DNA evidence did not positively link him to the crime. Instead, the prosecutor merely argued that because Petitioner could not be excluded from the DNA in the helmet, it was likely that he had worn it during the robbery, *when considered with other evidence*.  That other evidence was significant, including that he was apprehended after fleeing from the vehicle identified as the getaway car immediately after the robbery, in possession of money that had been stolen from the bank, having just

discarded a firearm.  In addition, the new DNA evidence does *not* exclude Petitioner as a contributor to the DNA sample in the helmet.  The new conclusion is merely that the DNA recovered from the lower portion of the helmet was inconclusive and that no inclusions can be made.  In addition, there was significant evidence that Petitioner committed the other bank robberies that took place in a month-long period using the same unusual pattern of the perpetrator wearing the motorcycle helmet and jumping up on the counter: in two of the robberies a shoe print was found that matched the shoes worn by Petitioner when he was arrested; in two of the stolen vehicles used as getaway cars were found hats with Petitioner's DNA on them; a check stolen from one bank was found near Petitioner's indicia at the residence of Petitioner's ex-girlfriend; and Petitioner's fingerprint was found on a plastic bag dropped during the robbery.  Consequently, the revised DNA report does not point unerringly to innocence or reduced culpability.

The superior court's analysis is both reasonable and fully supported by the record.

Because the revised DNA report in no way exonerates Blair, and other evidence against him is overwhelming,[3] Blair fails to demonstrate that "the facts underlying [his] claim[s], if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found [him] guilty of the underlying offense."  28 U.S.C. § 2244(b)(2)(B).

Regardless of the allegations here, Blair must seek the Ninth Circuit's authorization to file a successive petition.  *See Woods v. Carey*, 525 F.3d 886, 888 (9th Cir. 2008) ("Even if a petitioner can demonstrate that he qualifies for one of these exceptions, he must seek authorization from the court of appeals before filing his new petition with the district court."). The Court's docket indicates that Blair neither requested nor received such permission.

---

[3]     Because other evidence supports the conviction, even construing Blair's *pro se* Petition liberally to assert a sufficiency of the evidence claim does not warrant relief.  *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Schlup*, 513 U.S. at 330 (explaining that, under *Jackson*, a reviewing court's role is simply to determine whether there is any evidence, if accepted as credible by the trier of fact, sufficient to sustain conviction).

Therefore, the instant Petition must be dismissed without prejudice to refiling after Blair obtains the necessary permission.  *See Burton*, 549 at 153.

V. CONCLUSION AND ORDER

The instant Petition is a second or successive Petition that this Court is without jurisdiction to consider.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.  *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)).  Any further request for a Certificate of Appealability or application for leave to file a second or successive petition must be addressed to the Ninth Circuit Court of Appeals.  *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: December 6, 2016.

_/s/James K. Singleton, Jr._    <br>
JAMES K. SINGLETON, JR.<br>
Senior United States District Judge